1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ERIC D. R.,

              Petitioner,

     v.

JEFFERY A. BEARD,

              Respondent.

No.  1:13-cv-01060-LJO-SKO  HC

**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Eric D. R.[1] ("Petitioner") is a state prisoner represented by counsel and proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner's remaining grounds for habeas relief include: (1) he did not give his admission to the charges against him freely and voluntarily; (2) the trial court failed to advise Petitioner that he would have to register for life as a sex offender; and (3) Petitioner's 75-years-to-life constitutes cruel and unusual punishment.  The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.  Having reviewed the record as a whole and applicable law, the undersigned recommends that the Court deny the petition for habeas corpus.

*///*

---

[1]   As Petitioner is a minor, he is referenced herein as Eric D. R.  Other minors involved in this case are similarly referred to by abbreviation.  Fed. R. Civ. P. 5.2; Local Rule 140(a).

1

1  **I.**  **Factual Background[2]**

2  Between January 1 and March 23, 2010, Petitioner and his friend Francisco B., both

3  thirteen years old, sexually assaulted two neighbor girls, nine-year-old C.M. and eleven-year-old

4  N.M., on at least three occasions.  The victims were assaulted individually in locations including

5  the "clubhouse" (a vacant shed on Petitioner's family's property), Francisco's basement, and near

6  washing machines located at the side of Petitioner's home.  One assailant would restrain the

7  victim while the other performed one or more sexual acts on the victim, including oral, anal, and

8  vaginal penetration using his penis and fingers.  The assailants would then switch roles.  The

9  assailants threatened the victims with beatings, dog attacks, and the murder of their mother if they

10  did not submit.

11  **II.**  **Procedural Background**

12  In an amended juvenile wardship petition in the Tulare County Superior Court, Petitioner

13  was charged with sixteen felony counts: (1) one count of rape (Cal. Penal Code § 261(a)(2));

14  (2-11) ten counts of forcible lewd acts upon a child (Cal. Penal Code § 288(b)(1)); (12) one count

15  of forcible oral copulation (Cal. Penal Code § 288A(c)(1)); (13) one count of sexual penetration

16  by foreign object with force and violence (Cal. Penal Code § 289(a)(1)); (14-15) two counts of

17  attempted sodomy by use of force (Cal. Penal Code §§ 664 and 288A(c)(2)); and (16) one count

18  of oral copulation (Cal. Penal Code §§ 664 and 288A(c)(2)).  The juvenile petition also included

19  special allegations that the crime involved more than one victim (Cal. Penal Code § 667.61(b))

20  and that nine of the counts involved substantial sexual conduct (Cal. Penal Code §§ 288 and

21  288.5).

22  On June 24, 2010, Petitioner admitted as true counts 2, 3, 6, 11, and 14, and the remaining

23  eleven counts were dismissed.  Petitioner was sentenced to the statutory term of 15 years on each

24  of the five counts, for an aggregate sentence of 75 years to life.  The trial court committed

25  Petitioner to the California Department of Corrections and Rehabilitation, Division of Juvenile

26  Justice (DJJ).  He was also required to register as a sex offender.

27
[2] The Court adopts the facts determined by the California Court of Appeal.  *In re Eric D.*, 2012 WL 149774 (Cal. App. Jan. 19, 2012) (No. F061652) (reproduced at Doc. 2-1).  The state court's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).

28

2

1    Petitioner filed a timely direct appeal to the California Court of Appeal on January 13,

2    2011.  On January 19, 2012, the Court of Appeal affirmed the judgment.  The California Supreme

3    Court summarily denied review on April 11, 2012.

4    On May 3, 2012, Petitioner filed a petition for writ of habeas corpus with the Tulare

5    County Superior Court.  The petition advanced the same claims as the direct appeal and added a

6    claim of ineffective assistance of counsel arising from trial counsel's representation to Petitioner

7    that a guilty plea would result in his being confined in a group home.

8    On May 15, 2013, Petitioner filed a petition for writ of habeas corpus with the California

9    Supreme Court, and a federal petition for writ of habeas corpus on July 10, 2013.

10   The Superior Court summarily denied the petition without prejudice on August 23, 2013,

11   and the Supreme Court denied the habeas petition on October 2, 2013.

12   **III.    Standard of Review**

13   A person in custody as a result of the judgment of a state court may secure relief through

14   a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the

15   United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).  On April

16   24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

17   ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter.  *Lindh v.*

18   *Murphy*, 521 U.S. 320, 322-23 (1997).  Under the statutory terms, the petition in this case is

19   governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

20   Habeas corpus is neither a substitute for a direct appeal nor a device for federal review

21   of the merits of a guilty verdict rendered in state court.  *Jackson v. Virginia*, 443 U.S. 307, 332

22   n. 5 (1979) (Stevens, J., concurring).  Habeas corpus relief is intended to address only "extreme

23   malfunctions" in state criminal justice proceedings.  *Id.*  Under AEDPA, a petitioner can prevail

24   only if he can show that the state court's adjudication of his claim:

25           (1) resulted in a decision that was contrary to, or involved an unreasonable
26           application of, clearly established Federal law, as determined by the Supreme Court of
             the United States; or

27           (2)  resulted in a decision that was based on an unreasonable determination of the
28

3

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. To do so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's

determination was unreasonable.  *Harrington*, 562 U.S. at 102.

**IV.**   **Stay and Abeyance Was Previously Denied**

Petitioner's first ground for relief sought an order of stay and abeyance to permit the exhaustion of two additional claims.  The Court denied this motion on August 20, 2013.  Doc. 5.  Accordingly, the first claim is no longer before the Court.

**V.**   **Petitioner's Juvenile Court Admissions Were Knowing, Intelligent, and Voluntary**

As his second and third grounds for habeas relief, Petitioner seeks to set aside his admissions to counts 2, 3, 6, and 11 (four of ten pending counts of forcible lewd acts upon a child (Cal. Penal Code § 288(b)(1)), and 14 ( one of two counts of attempted sodomy by use of force (Cal. Penal Code §§ 664 and 288A(c)(2)) of the wardship petition.[3]  In claim two, Petitioner contends that the juvenile court failed to disclose and misrepresented the potential sentence that would result from a guilty plea.  In claim three, Petitioner contends that the juvenile court failed to advise him that an admission to the charges would subject him to registration as a sex offender.

**A.**   **Standard for Reviewing Claims Concerning Plea Agreements**

When a defendant admits that he committed the acts charged in the indictment, he "stands as a witness against himself."  *Brady v. United States*, 397 U.S. 742, 748 (1970). Because the Fifth Amendment to the U.S. Constitution protects a defendant from compelled self-incrimination, a guilty plea must be knowing, intelligent, and voluntary.  *Id.*  "The record must show that the defendant voluntarily relinquished his privilege against self-incrimination, his right to trial by jury and his right to confront his accusers, and that he understood the nature of the charges and the consequences of his plea."  *Loftis v. Almager*, 704 F.3d 645, 647 (9th Cir. 2012) (internal citations omitted).  "The test for determining whether a plea is valid is 'whether

---

[3] Following Petitioner's admissions, the juvenile court dismissed the remaining claims.

the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)).

**B.    The Juvenile Court Fully Disclosed Petitioner's Possible Commitments Following his Admission of Claims 2, 3, 6, 11, and 14**

As the second ground for relief, Petitioner contends that because he was never told that he would be subject to an aggregate sentence of 75 years in prison and because the juvenile court misrepresented its intent to commit him to a group home, his admission to the charges against him was not freely and voluntarily given.  This contention lacks merit.  The transcript of the plea hearing reflects the juvenile court's explicit statement of the range of consequences that the probation department could recommend to the court, including the potential 75-year sentence.  In addition, Petitioner's contention that he understood that he was to be committed to a group home is based on the juvenile court's off-the-record prediction and is not consistent with statutory provisions governing commitment of delinquent juveniles in California.

**1.    State Court Opinion[4]**

The California Court of Appeal rejected Petitioner's claim that the juvenile court misrepresented the potential consequences of admission, finding that "the record affirmatively demonstrate[d] on its face that [Petitioner] was aware of his rights and the direct consequence of his admissions."  *Eric D.*, 2012 WL 149774 at *5.  The court found no evidence in the record to support Petitioner's assertions.  In support of its findings, the court examined the juvenile court proceedings and discussed their implications in light of California law governing juveniles:

---

[4]    Because the California Supreme Court summarily denied review, the Court must "look through" the summary denial to the last reasoned decision, which is, in this case, the opinion of the California Court of Appeal, Fifth Appellate District.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).

"THE COURT: Are you having any trouble understanding what we are talking about here today?

"[PETITIONER]: No.

"THE COURT: So you talked to your attorney about what you are going to do today.  [¶]  Do you understand what you are doing today?

"[PETITIONER]: Yes.

"THE COURT: You also live in Tulare County?

"[PETITIONER]: Yes. [¶] . . . [¶]

"THE COURT: **Your exposure maximum period of physical confinement is also 75 years to life, just like [F.B.].  [¶]**  Do you understand that?

"[PETITIONER]: Yes.

"THE COURT: And you also understand that you will be adjudged a ward of the juvenile court and placed on probation.  [¶]  Do you understand that?

"[PETITIONER]: Yeah."

**The juvenile court then stated that it would explain "the potential results of what could happen by your entering this admission.  These are things that you could-you may have to do or may be ordered to do based on what you are doing today as far as admitting these charges."**  The court explained that probation was going to look into each minor's background, talk to the parents, and look at "all the different factors" before probation made a recommendation.  The court asked the minors to "listen carefully and make sure you understand what I'm saying," and advised the minors to speak to their attorney if they did not understand something.  Both minors stated that they understood.

The juvenile court then advised the minors of the wide range of possible dispositional orders, including a commitment to the [Department of Juvenile Justice], that the court could impose based on their admissions.  Both minors stated that they understood all of the possible consequences.

The juvenile court then advised both minors of their statutory and constitutional rights, stating that, "in order to enter your admission, you have to tell me that you don't want to exercise these rights.  In other words, you don't want these things to happen."  The following then occurred:

"[THE COURT:] So the first right you have is the right to have a hearing.  [¶]  Do you understand that right, [F.B.]?

"[F.B.]: Yes.

"THE COURT: Okay.  You understand . . . that right, [Petitioner]?

"[PETITIONER]: Yes.

"THE COURT: You have the right to have a hearing.  That just means that you can have people come in here and testify and at that hearing you

7

would be able to see and hear the witnesses testify against you while they are under oath and your attorneys can question those witnesses on your behalf. [¶] Do you understand that right?

"[PETITIONER]: Yes.

"[F.B.]: Yes.

"THE COURT: A hearing is when people come up here and they take an oath. They swear to tell the truth. After they swear to tell the truth, then they are asked questions and then they answer questions and the questions are going to be about these incidences [*sic*] that are in the petition. Okay? [¶] So what happens, I'm saying you have the right to have a hearing where the People have to come and do that, when they come and talk about what they say happened. Then you would have the chance to have your attorney ask them questions about what they are saying and make sure that what they are saying is what the other attorney says they are saying. They can ask questions and try to figure out what the truth is. So if you had a hearing you would be able to have your attorneys on your behalf question the people that come here and testify against you. [¶] Do you understand that right, [F.B.]?

"[F.B.]: Yes.

"THE COURT: How about you, [Petitioner]?

"[PETITIONER]: Yes.

"THE COURT: Are you giving up your right to do that? [¶] If you are you [*sic*] giving up the right to do that, that means you don't want to have a hearing and you are not going to have them come in and testify against you. [¶] Is that what you want, [Petitioner]?

"[PETITIONER]: Yes.

"THE COURT: How about you, [F.B.]?

"[F.B.]: Yes.

"THE COURT: Now, at that hearing you also have the right to present evidence in your defense. Okay? And that can be in all different forms of evidence. You can have the court subpoena witnesses to present evidence at no charge to you. You can have people testify under oath on your behalf. And you can even testify on your own behalf if you wanted to do. That would happen if you had a hearing. You'd be able to put on that defense. [¶] Do you understand that right, [F.B.]? [¶] If you don't understand, talk to your attorney and he'll explain it to you.

"(A discussion with minor and attorney.)

"[F.B.]: Yes.

"THE COURT: Okay. Are you giving up your right to have that option to put on a defense?

"[F.B.]: Yes.

8

"THE COURT: Okay. How about you, [Petitioner]? [¶] Do you understand your right to put on a defense?

"[PETITIONER]: Yes.

"THE COURT: Are you giving up your right to do that?

"[PETITIONER]: Yes.

"THE COURT: You both had a chance to talk to your attorneys about what that is. [¶] So you understand what it is, correct?

"[PETITIONER]: Yes.

"[F.B.]: Yes.

"THE COURT: Finally, you have the right to remain silent and not incriminate yourself. [¶] Do you understand what that right is?

"[PETITIONER]: Yes.

"[F.B.]: Yes.

"THE COURT: Are you giving up that right, [F.B.]?

"[F.B.]: Yes.

"THE COURT: Okay. You understand when you admit this petition, that's the same as giving up your right to remain silent. [¶] Because everybody has a right to just sit there and make the district attorney prove that this case happened. But if you give up your right to a hearing, then the district attorney is not going to have a chance to prove it because you don't want to have a hearing. If you don't want a hearing, that means you are going to admit it. When you admit it, that incriminates yourself. In other words, you say yes, I committed this offense. Okay. That's how you are giving up your right to remain silent. [¶] Is that what you want to do?

"[F.B.]: Yes.

"THE COURT: Okay. Now, [Petitioner], same situation for you. [¶] Do you understand that right?

"[PETITIONER]: Yes.

"THE COURT: Do you want to give up that right?

"[PETITIONER]: Yes."

The juvenile court then asked [Petitioner's] counsel if he had had sufficient time to discuss the case "and all its ramifications," including "rights, defenses, and possible consequences of [the] plea" with [Petitioner]. Counsel affirmed that he had and that, in his judgment, [Petitioner] understood his rights. Counsel also consented and concurred in [Petitioner's] admissions "as well as his representation made here in open court" and joined in [Petitioner's] waiver of his statutory and constitutional rights.

Counsel stipulated to the factual basis based on the police reports, and [Petitioner]

then acknowledged that he knew, at the time the offenses were committed, that "it was wrong to do those things." After stating he had no more questions for the court, [Petitioner] admitted committing the various counts and to the special allegations.

In light of the advisements that the juvenile court gave [Petitioner] and [Petitioner's] repeated affirmations that he understood the advisements, the record affirmatively demonstrates on its face that [Petitioner] was aware of his rights and the direct consequences of his admissions. (See *In re Tahl*, *supra*, 1 Cal.3d at p. 132.) Although [Petitioner] argues that he "expressed a substantial lack of understanding as to [the] meaning and purpose of the admonitions as well as to the proceedings in general," the only example he offers involved a brief exchange between the court and F.B. that did not include appellant.[FN5]

> FN 5   At one point, when the juvenile court asked F.B. if he wanted to give up his right to a hearing or have a hearing, F.B. stated, "A hearing." When the court explained that a hearing would mean that it could find all 16 charges against him true, F.B. then said he was giving up his right to a hearing.

*In re Eric D.*, 2012 WL 149774 at **3-5 (emphasis added).

## 2.        The Juvenile Court Fully Disclosed the Potential Penalties

The record does not support Petitioner's contention that his admission was not knowing because the juvenile court failed to disclose the full range of potential commitments for the charges to which he admitted. As set forth in the state court's opinion quoted above, the juvenile court clearly and explicitly told Petitioner, "Your exposure maximum period of physical confinement is also 75 years to life, just like [F.B.]." Petitioner confirmed that he understood.

The juvenile court then set forth the full range of potential commitments available according to the probation department's recommendation. Although the state court summarized the juvenile court's initial discussion of possible outcomes, the juvenile court's specific disclosures are directly relevant to Petitioner's claim and are set forth below. Before setting forth the constitutional and other legal disclosures relevant to Petitioner's admission, the juvenile court stated:

> THE COURT: Okay. Now, what I'm going to do next is I'm going to tell you the potential results of what could happen by your entering this admission. There are things that you could—you may have to do or may be ordered to do based on what you are doing today as far as admitting these charges. Okay?
>
> I'm not saying that any one of them in particular is going to apply

to you because we're going to have a report done.  Probation is going to look into your background and going to talk to your parents and so we are going to look at all the different factors and then probation is going to make a recommendation.  But any one of these things I'm going to tell you in a few minutes could be included in that recommendation.  That means that's what you'll be ordered to do.  So I need you to listen carefully and make sure you understand what I'm saying.

If you don't understand, your attorneys will explain to you whatever ones you don't understand.  I'm going to make sure you understand that this could be the consequence or what happens as a result of your entering these admissions.

Okay.  Do you understand that [Petitioner]?

[PETITIONER]:      Yes.

THE COURT: How about you, [Francisco B.]?

[FRANCISCO B.]:    Yes.

THE COURT: You could be committed to the Youth Authority now known as the Division of Juvenile Justice.  You could be committed to the short-term or long-term detention facility.  You could be committed to the Tulare County Youth Facility Boot Camp.  You could be placed with your parents or legal guardian on probation.  You could be placed in a group home, foster home, or home of a suitable relative.  You could be placed on the electronic monitor.

You could be ordered to enroll and complete appropriate programs such as counseling, drug treatment, or anger management.  You could be ordered to pay actual restitution and a restitution fine in the amount of $100.  You could be ordered to perform community service, comply with curfews, and mandatory school attendance.

You could also—gang terms could be imposed.  If gang terms are imposed, you could be ordered not to associate with people you know are gang members or could be required to register as a gang member pursuant to Penal Code Section 186.30.

If you are not a citizen of the United States, you could be deported from the United States or refused admission into the United States or denied naturalization as a United States citizen.

[Petitioner], do you understand all those consequences I told you?

[PETITIONER]:      Yes.

4 RT 27:14-29:15.

///

///

11

Based on irrefutable evidence in the record, the state court reasonably concluded that the juvenile court fully disclosed the full range of potential dispositions following Petitioner's admissions of the acts constituting the crimes alleged in counts 2, 3, 6, and 11.

### 3.   California Law Does Not Provide for a Juvenile Court's Designation of the Commitment Prior to a Minor's Admission

Based on the declarations of Petitioner and of his counsel before the juvenile court, Petitioner also contends that his admissions were not knowing, intelligent, and voluntary because he and his counsel understood the juvenile court to have promised placement in a local group home in the course of discussions leading the entry of admissions by Petitioner and Francisco B. Other than the declarations of Petitioner and his trial attorney, the record includes no evidence of such a representation by the juvenile court. Petitioner concedes that the juvenile court never "indicated a likely disposition on the record." Doc. 2 at 34. Notably, Petitioner was not present when the juvenile court allegedly predicted her assessment of a likely outcome. Respondent argues that if prior to entry of Petitioner's admission, the juvenile court stated a preference for group home placement over any other disposition, her remark was predictive, not promissory.

Following the juvenile court's adoption of the probation department's recommendation of commitment to DJJ, Petitioner did not argue that he had been promised a group home placement. Nor did he raise this argument in either his direct appeal or his petition for writ of habeas corpus. Although Respondent considers Petitioner to have raised this issue in his habeas petition to the Tulare County Superior Court (Lodged Doc. at 19-20), the undersigned disagrees. The state petition did not contend that the juvenile court misrepresented the ultimate sentence: it alleged that trial counsel misrepresented the likely disposition. As a result, the state court was never given an opportunity to adjudicate this claim on its merits.[5] Because Petitioner did not advance this argument below, he must show cause and actual prejudice for his failure to present the argument in state court. Petitioner does not do so.

//

---

[5] The Tulare County Superior Court did not address any habeas claim on its merits: It summarily denied the petition as a whole.

1    Instead, Petitioner relies on state authority derived from cases addressing plea bargains in

2    adult criminal prosecutions.  *See, e.g., People v. Cruz*, 44 Cal. 3d 1247, 1250 (1988) ("upon

3    acceptance of a plea[] specifying the punishment available to the sentencing court, the court may

4    not impose a punishment more severe than that specified in the [plea] bargain."  (Doc. 2 at 33));

5    Cal. Penal Code § 1192.5 ("Where the plea is accepted by the prosecuting attorney in open court

6    and is approved by the court, the defendant . . . cannot be sentenced on the plea and the court may

7    not proceed as to the plea other than as specified in the plea").  Petitioner's authority is

8    inapposite.  Juvenile wardship petitions are not resolved under the California Penal Code but are

9    instead authorized and governed by appropriate provisions of the California Welfare and

10   Institutions Code.  Despite the analogous nature of a minor's admission of guilt to an adult plea

11   agreement, the differing provisions of the Welfare and Institutions Code and the Penal Code

12   distinguish the two procedures in ways that are relevant in analyzing Petitioner's claim.

13       Under California law, a person under 18 years of age who violates a state law may be

14   adjudged to be a ward of the court.  Cal. Welf. & Inst. Code § 602(a).  The juvenile court

15   addressed the charges against Petitioner in such a wardship proceeding.  "An order adjudging a

16   minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any

17   purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding."  Cal.

18   Welf. & Inst. Code § 203.

19       In a wardship proceeding, a minor may enter an admission or a plea of no contest, which

20   is analogous to a guilty plea to the extent that it "constitutes an assent to all facts essential to a

21   finding that the minor is a person described in [California Welfare and Institutions Code] section

22   602" (Minors violating laws defining crime; ward of court).  *In re John B.*, 215 Cal. App. 3d 477,

23   484 (1989).  A key difference is that unlike a plea bargain, a minor's admission is not part of a

24   contracted plea bargain including a stipulated sentence.  Instead, the disposition of the minor is

25   determined following the minor's admission that he has violated the law defining the crime(s) of

26   which he is accused and the juvenile court's determination that the minor is a person described in

27   § 602.  California law provides:

28   ///

13

1
2
3
4
5
6
7
8
9

> After finding that a minor is a person described in Section . . . 602, the court shall hear evidence on the question of the proper disposition to be made of the minor.  The court shall receive in evidence the social study of the minor and any other relevant and material evidence that may be offered, including an written or oral statement offered by the victim, [or] the parent or guardian of the victim if the victim is a minor . . .  In addition, if the probation officer has recommended that the minor be transferred to the Department of Corrections and Rehabilitation, Division of Juvenile Justice pursuant to an adjudication for an offense requiring him to register as a sex offender pursuant to Section 290.008 of the Penal Code, the SARATSO selected pursuant to subdivision (d) of Section 290.04 of the Penal Code shall be used to assess the minor and the court shall receive that risk assessment score into evidence.  In any judgment and order of disposition, the court shall state that the social study made by the probation officer has been read and that the social study and any statement has been considered by the court.

10

> Cal. Welf. & Inst. Code § 706.

11
12
13
14
15
16
17
18
19
20
21

"A juvenile ward's treatment under the delinquency law has a different focus than punishment under adult criminal statutes.  *In re Edward C.*, 223 Cal. App. 4th 813, 825 (2014).  The objective is to fulfill the legislative purpose that "[m]inors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances," including "punishment that is consistent with the rehabilitative objectives" of the statutory scheme.  Cal. Welf. & Inst. Code § 202(b).  "'Significant differences between the juvenile and adult offender laws underscore their different goals:  The former seeks to rehabilitate, while the latter seeks to punish.'"  *Edward C.*, 223 Cal App. 4th at 825 (quoting *In re Julian R.*, 47 Cal. 4th 487, 496 (2009)).

22
23
24
25
26
27

The statutory procedure was followed in Petitioner's case.  The juvenile court accepted Petitioner's admission, adjudged him to be a person described in § 602, and referred him to the probation department for evaluation and the parole officer's recommendation as to the disposition of the case.  *See* 6 RT 48-49.  The disposition hearing was scheduled to allow the probation officer sufficient time to evaluate Petitioner and to formulate a recommended disposition.[6]

28

---

[6] The juvenile court requested that Petitioner and Francisco waive time for the disposition, citing her upcoming unavailability and a feeling that "the disposition is going to take a little longer and I don't want to rush it."  6 RT

California law does not provide for a disposition decision before the probation department has had an opportunity to evaluate the minor, identify his rehabilitative needs, and submit its recommendation.  Petitioner nonetheless urges this Court to consider the juvenile judge's alleged off-the-record comment that she was inclined to send Petitioner to a group home and was not considering DJJ as tantamount to a plea agreement specifying a particular sentence.

Since it was not raised below, the state court did not have an opportunity to address the juvenile court's alleged statement in light of California law.  Petitioner also cites no precedent supporting his contention that his admission was not knowing, intelligent, and voluntary in light of the juvenile court's ultimate failure to select Petitioner's disposition based on its off-the-record comment (1) before evaluation of Petitioner's needs and recommendation of an appropriate disposition in compliance with state statutes, and (2) despite clear and specific statements on the record of the full range of dispositions that might be imposed as a result of Petitioner's admission, up to and including the disposition actually imposed.

Finally, even if Petitioner and his counsel believed that the juvenile court had promised that the admission would result in a disposition of placement in a local group home before Petitioner's admission was placed on the record, the juvenile court's on-the-record comments clearly and forcefully set forth the full range of potential dispositions.  Petitioner acknowledged his understanding on the record and neither questioned the juvenile court about the supposed agreement of group home placement nor objected that he had been promised group home placement.  As a result, the undersigned finds Petitioner's claim that he relied on a promise of group home placement to lack credibility.

///

///

///

///

///

///

49:24-26.

15

**4. Francisco B.'s Alleged Lack of Understanding Does Not Support a Conclusion That Petitioner Did Not Understand the Juvenile Court's Admonishments**

In support of his federal claim, Petitioner again quotes Francisco B.'s apparent confusion (6 RT 36:18-37:6) as evidence supporting Petitioner's failure to understand the juvenile court's disclosure regarding potential dispositions following admission. The state court rejected the exchange between the juvenile court and *Francisco B.* as proof of *Petitioner's* lack of understanding. This Court should not second-guess the state court's rejection of a meritless argument.

**5. Conclusion**

The state court reasonably concluded that the juvenile court fully disclosed Petitioner's possible commitments following his admission of claims 2, 3, 6, 11, and 14.

**C. The Juvenile Court Was Not Required to Disclose Potential Sex Offender Registration**

In his third claim, Petitioner contends that the juvenile court violated his due process rights by failing to admonish him that he could potentially be ordered to register as a sex offender.

**1. State Court Decision**

The California Court of Appeal found no prejudicial error occurred as a result of the juvenile court's failure to disclose the potential requirement that Petitioner would be required to register as a sex offender.

Analyzing the claim under California law, the court stated that before a court accepts a defendant's admission to criminal charges against him, the court must advise the defendant of any direct consequences of his admission. *In re Eric D.*, 2012 WL 149774 at *5. A direct consequence is one that has "a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Id.* (quoting *People v. Moore*, 69 Cal. App. 4th 626, 630 (1998)) (internal quotation marks omitted). The court need not advise a defendant of any collateral consequences, however. *In re Eric D.*, 2012 WL 149774 at *5. A collateral consequence is one

///

16

that does not "inexorably follow" from a conviction on the charge to which the defendant pleads guilty. *Id.* (quoting *Moore*, 69 Cal.App.4th at 630).

Because California Penal Code § 290 automatically requires a person convicted as a sex offender to register, it is a direct consequence of an individual's conviction of any of the crimes enumerated in § 290. *In re Eric D.*, 2012 WL 149774 at *6. As a result, a trial court is required to advise an adult defendant of the registration requirement before the court accepts a plea of guilty to any of the offenses enumerated in §290. *Id.*

The requirement is different when a minor makes an admission in juvenile court. *Id.* Under California Welfare and Institutions Code § 203, a juvenile court proceeding is not a criminal proceeding, and an order declaring a juvenile delinquent to be a ward of the court is not a criminal proceeding. *Id.* A minor's duty to register as a sex offender is governed by California Penal Code § 290.008, which applies only if the minor is committed to the DJJ. *Id.* Since at the time of Petitioner's admission, it was not certain that he would be committed to the DJJ, the registration requirement was a collateral consequence of Petitioner's admission. *Id.* As a result, the juvenile court was not required to disclose to Petitioner the possibility that he would be required to register as a sex offender. *Id.*

Even if the juvenile court's failure to advise Petitioner of the registration were error, the state court was only required to set the admission aside if the error were prejudicial to Petitioner. *Id.* To prove prejudice, a "defendant must demonstrate affirmatively that it is reasonably probable that such admonishment would have persuaded [the defendant] to deny the truth of the allegations." *Id.* (quoting *In re Ronald E.*, 19 Cal. 3d at 321). The state court found that any error was harmless because the Petitioner did not establish prejudice:

> Although [Petitioner] contends that "logic alone would dictate that [he] would not have entered a plea that would significantly impact the course of his life and follow him indefinitely" had he rejected the plea agreement, he would have faced a jurisdictional hearing on 16 sex offenses, each of which carried the possibility that he would be required to register as a sex offender. [Petitioner] did not object when, at the time of disposition, the juvenile court ordered him to register. Further, each of the 16 alleged counts in the amended petition contained notice about the possibility that appellant would be required to register as a sex offender. Finally, appellant was represented by counsel who is presumed to have advised him about

1

2

the possible consequences of his admissions.   (See *Strickland v. Washington* (1984) 466 U.S. 668, 689.)

3

*In re Eric D.*, 2012 WL 149774 at *6 (footnote omitted).

### 2.     The State Court Reasonably Rejected the Registration Claim

4

5

6

7

8

9

10

11

The result under federal precedent would be the same.  For a guilty plea to be voluntary, knowing, and intelligent, the defendant must be "fully aware of the *direct* consequences." *Brady*, 397 U.S. at 755.  "[A] court conducting a plea colloquy must advise the defendant of the 'direct consequences of his plea,' but need not advise him of 'all the possible collateral consequences" of the plea.  *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011).  Although the Supreme Court has not identified all the particular consequences that are direct or collateral, the Ninth Circuit considers a consequence to be collateral if its imposition "lies within the discretion of the court." *United States v. Kikuyama*, 109 F.3d 536, 537-38 (9th Cir. 1997).

12

13

14

15

16

17

Because California Penal Code § 290.008(c) requires a minor who committed forcible lewd acts upon a child (counts 2, 3, 6, and 11, Cal Penal Code § 288) and attempted sodomy (count 14, Cal. Penal Code § 288) to register only upon release or parole from the DJJ, the state court reasonably held that the registration requirement was a collateral consequence.  The Court should decline to grant habeas relief based on the juvenile court's failure to warn Petitioner of the possibility that he would be required to register as a sex offender.

18

### VI.     Ineffective Assistance of Counsel

19

20

21

22

23

As his fourth ground for habeas relief, Petitioner contends that trial counsel was ineffective in advising Petitioner that his admission and plea would result in a commitment to a group home. Petitioner conceded that this claim was unexhausted.  On August 20, 2013, the Court denied Petitioner's motion for stay and abeyance with regard to this claim.  Accordingly, the Court need not address it.

24

### VII.     Trial Court's Failure to Exercise Sentencing Discretion

25

26

27

As his fifth ground for habeas relief, Petitioner contends that the trial court erred in failing to exercise its discretion in sentencing Petitioner.  Petitioner conceded that this claim was

///

28

1   not exhausted.  On August 20, 2013, the Court denied Petitioner's motion for stay and abeyance

2   with regard to this claim.  Accordingly, the Court need not address it.

3   **VIII.**   **Petitioner's Sentence Is Not Cruel and Unusual Punishment**

4   As his sixth ground for habeas relief, Petitioner contends that sentencing him to a prison

5   term of 75 years to life was so disproportionate as to constitute cruel and unusual punishment.

6   **A.**   **Petitioner's Sentence**

7   Following Petitioner's admission of counts 2, 3, 6, 11, and 14, the juvenile court referred

8   the case to the probation department for evaluation of Petitioner's rehabilitative needs and

9   recommended disposition.  In a contested disposition hearing, the probation department

10   psychologist, Dr. Claudia Cerda, opined that Petitioner required intensive therapy exceeding that

11   available in a group home placement.[7]  According, Dr. Cerda recommended placement in the DJJ

12   sex offender treatment program.  Defense expert Timothy Zavala, a licensed social worker,

13   testified that Petitioner had little likelihood of reoffending and could be adequately treated by

14   placement in a group home.  Following review of applicable law and all evidence submitted, the

15   juvenile court determined that the DJJ sex offender program was the best placement to ensure

16   Petitioner's "future success."

17   In determining the sentencing term, the juvenile court had no discretion.  California law

18   required the Court to sentence Petitioner to a term of 15 years to life on each of the five counts to

19   which Petitioner entered an admission.  Cal. Penal Code § 667.61(b).  Because the five counts

20   involved separate victims on separate occasions, the five sentences had to be consecutive.  Cal.

21   Penal Code § 667.61(i).  As a result, the aggregate sentence was 75 years to life.

22   **B.**   **State Court Decision**

23   The Court of Appeal rejected Petitioner's claim that his sentence was so excessive that it

24   constituted cruel and unusual punishment.  *In re Eric D.*, 2012 WL 149774 at *7.  Applying the

25   California constitutional standard for cruel and unusual punishment, the sentence was not so

26   ///

27

28   ---
[7] Dr. Cerda testified that the only group home providing services to juvenile sex offenders provided only the equivalent of one hour of therapy per week, which would be inadequate to address Petitioner's rehabilitative needs.

1    disproportionate to Petitioner's offenses that "'it shocks the conscience and offends fundamental

2    notions of human dignity.'"  *Id.* (quoting *In re Lynch*, 8 Cal. 3d 410, 424 (1972).

3           The court also considered the federal standards of disproportionality set forth in *Solem v.*

4    *Helm*, 463 U.S. 277, 292 (1983): "To determine whether a sentence is disproportionate, courts are

5    to evaluate certain identified objective criteria including the seriousness of the offense, the penalty

6    imposed, the sentences imposed on others who have committed the same or similar offenses, and

7    the sentences imposed in other jurisdictions for the same or similar offenses."  *In re Eric D.*, 2012

8    WL 149774 at *8.  Acknowledging Petitioner's argument, which focused on the first criteria, the

9    court "agree[d] with the juvenile court that, while these offenses may have been [Petitioner's] first,

10   they were serious."  *Id.*

11          The Court set forth the statutory scheme for juvenile sentencing in California:

12               Welfare and Institutions Code section 731 limits the potential
                 maximum confinement period for a minor committed to the DJJ.
13               As the Supreme Court explained, "Section 731 sets two ceilings on
                 the period of physical confinement to be imposed.  The statute
14               permits the juvenile court in its discretion to impose either the
                 equivalent of the 'maximum period of imprisonment that could be
15               imposed upon an adult convicted of the offense or offenses'
                 committed by the juvenile (§ 731, subd. (c)) or some lesser period
16               based on the facts and circumstances of the matter or matters that
                 brought or continued' the juvenile under the court's jurisdiction."
17               (*In re Julian R.* [ (2009) 47 Cal.4th at 487, 498.])  Thus, in
                 considering the facts and circumstances of a minor's case, a
18               juvenile court could set the maximum period of physical
                 confinement at the maximum term for an adult of impose a lower
19               term.  (*Ibid.*)

20          *In re Eric D.*, 2012 WL 149774 at *8.

21          The appellate court found that the juvenile court had elected to follow the probation

22   department's recommendation after reviewing and considering the case as a whole, and balancing

23   Petitioner's age and lack of criminal record against the seriousness of the offenses.  *Id.*  The court

24   further found that the juvenile court's statement that it lacked the discretion under § 667.61 to

25   impose less than the statutorily mandated sentence constituted an explanation of how the juvenile

26   court arrived at the maximum aggregate sentence of 75 years to life.  *Id.* at **8-9.  The appellate

27   court rejected Petitioner's claim that the juvenile court had failed to consider the facts and

28   circumstances of the offenses.  *Id.* at *9.  It concluded that having heard the defense arguments and

                                             20

having indicated its review of the record as a whole, the juvenile court was presumed to have considered the facts and circumstances in its decision to impose the maximum sentence.  *Id.*

### C.   <u>The Sentence Imposed Is Not Disproportionate</u>

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const., amend. VIII.  Courts determine whether punishment is cruel or unusual by looking beyond historical conceptions to "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

Whether a sentence violates the Eighth Amendment's prohibition of cruel and unusual punishment requires the court to determine whether the term is grossly disproportionate to the offense.  *Lockyer*, 538 U.S. at 72.  What constitutes a grossly disproportionate sentence is unclear.  *Id.*  "[T]he only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."  *Id.* at 73.  Successful challenges based on disproportionality are "exceedingly rare."  *Solem*, 463 U.S. at 289-90.

Citing to the synopses of *Graham v. Florida*, 560 U.S. 48, 49 (2010), and *Miller v. Alabama*, 132 S.Ct. 2455, 2457-58 (2012), Petitioner contends that "[i]n recent years, the U.S. Supreme Court has held that imposition of a life sentence or its functional equivalent upon a minor constitutes a violation of the Eighth Amendment."  Petitioner overgeneralizes the holdings of *Graham* and *Miller*.

*Graham* and *Miller* prohibited, as cruel and unusual, life sentences without parole for juveniles convicted of both homicide and offenses that are not homicide.  Both decisions analyzed the proportionality standard by considering whether appropriate punishment varied when applied to juveniles as a category.  The Court acknowledged that even for a juvenile offender convicted of an offense that is not homicide, a life sentence may be appropriate:

> A state is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime.  What the State must do, however, is to give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.  It is for the State, in the first instance, to explore the

means and mechanisms for compliance.   It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender within his natural life.   Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives.   The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life.   It does prohibit States from making the judgment at the outset that those offenders will never be fit to reenter society.

*Graham*, 560 U.S. at 75.

Petitioner's situation is also distinguishable from those of Graham and Miller in that he was not convicted of a crime in adult court and sentenced to a life term, but entered an admission in a juvenile wardship proceeding which resulted in his placement in a juvenile sexual offender treatment program in which he could receive therapy.   The 75-years-to-life term is the maximum period for which Petitioner may be confined.   As Petitioner participates in the treatment program, the Youth Authority Board will determine the actual duration of Petitioner's confinement.   An individual such as Petitioner, who has been commit to the DJJ as a person described in § 602, "shall be discharged upon the expiration of a two-year period of control or when he or she attains 25 years of age, whichever occurs later, unless an order for further detention has been made by the committing court pursuant to Article 6 (commencing with Section 1800)."   Cal. Welf. & Inst. Code § 1769.

No Supreme Court case holds that a juvenile offender convicted of crime(s) less than homicide, attempted homicide, or a felony triggering enhanced sentencing such as California's "three-strikes" law may not be sentenced to a life term with the possibility of parole.   In fact, the Supreme Court's holding in *Graham* explicitly contemplated that a juvenile convicted of a nonhomicide crime could receive a life sentence as long as the sentence included a possibility of parole.   In denying Petitioner's claim of cruel and unusual punishment, the California courts reasonably applied established law.

///

///

## IX.   Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b)  There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B)  the final order in a proceeding under section 2255.
>
> (2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3)  The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part."  *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Accordingly, the Court declines to issue a certificate of appealability.

## X.        Conclusion and Recommendation

The undersigned recommends that the Court deny the Petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1).  Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections.  The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __**September 9, 2016**__            _____/s/ *Sheila K. Oberto*_____
                                                        UNITED STATES MAGISTRATE JUDGE

24